# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| JAMES REUBEN BURTON, JR. and ) | Case No. 23–30128 |
| SUSAN HUNT BURTON, ) | |
| ) | Chapter 13 |
| Debtors. ) | |
| ) | |

## OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN BY NATAN HOLDINGS, LLC, AND CRYPTO COLO CENTER CORP

Natan Holdings, LLC, an Illinois limited liability company, and Crypto Colo Center Corp, a Kansas corporation, creditors in this case, object to confirmation of the Chapter 13 plan filed by the Burtons on March 7, 2023 (Doc. 14; the "Plan").

**The Plan Violates 11 U.S.C. § 1325(a)(1), (3), (6), and (7)**

1.   To confirm the Plan, the Burtons must show that the Plan complies with all applicable provisions in title 11, the Plan was proposed in good faith, the debtors can make all payments under the Plan, and the action of the debtors in filing the petition was in good faith. 11 U.S.C. § 1325(a)(1), (3), (6), and (7).

2.   A chapter 13 plan cannot be confirmed if the debtors have not acted in good faith. *See, e.g., Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367, 374 (2007) (because a discharge is available to an "honest but unfortunate debtor," a bankruptcy court can properly dismiss a chapter 13 case "because of prepetition bad-faith conduct... [because] that individual, in other words, is not a member of the class of honest but unfortunate debtors that the bankruptcy laws were enacted to protect.'" (Edited for clarity.)).

3. The Burtons' schedules, statement of financial affairs, and other official forms (generically, "Schedules") and Plan show that this case does not involve honest but unfortunate debtors.

4. The Burtons' Schedules are wrong in three significant ways:

(a) the Burtons omitted obligations to Natan Holdings and to CCC, even though CCC has sued Mr. Burton, personally;

(b) the Burtons' Schedule E/F omits Mr. Burton's criminal restitution obligation in *United States of America v. James Reuben Burton, Jr.*, 3:02-CR-21 (W.D.N.C.) (the "Burton Criminal Case"); and

(c) the Burtons' scheduled disposable income (Doc. 1 at p. 39 (Schedule I)) is contradicted within the Burtons' Schedules and by Mrs. Burton's statement in Court on March 8, 2023, that Dei Vitae Enterprises, LLC ("DVE"), the Burtons' business and the source of Mr. Burton's alleged $10,000 monthly income, had no bank accounts and had not received the amount allegedly paid by Marigny Oil & Gas for the purported sale of DVE's Kansas property.

**The Plan Fails to Comply with the Applicable Provisions of Title 11
(11 U.S.C. §§ 1325(a)(1) and 109(e))**

5. To qualify for Chapter 13, the debtors must have "regular income." 11 U.S.C. § 109(e).

6. The Plan relies on Mr. Burton receiving a regular monthly income of $10,000 per month, as shown on the Burtons' Schedule I (Doc. 1 at 39–40) and Official Form 122C-1 (*id.* at 45, ¶ 2).

7. Based on the Burtons' Schedules and other records, Mr. Burton has never received a $10,000 monthly salary from DVE.

8. The Burtons' Statement of Financial Affairs (Doc. 1 at 58–70) does not show Mr. Burton receiving any income from DVE in 2023 and states that his income in 2022 was only $75,000.

9. KLMKH paid Mr. Burton $66,000 in 2022, comprised of $6,000 per pay period for 11 pay periods.

10. If the Burtons' Statement of Financial Affairs (Doc. 1 at 59, ¶ 4) is correct, DVE paid Mr. Burton no more than $9,000 in 2022.

11. That is far less than the $10,000 per month reported by the Burtons on Schedule I and Official Form 122C-1.

12. The Burtons' Schedules also contain contradictory information regarding Mrs. Burton's salary.

13. The Burtons' Schedule I (Doc. 1 at 39–40, ¶ 2) shows Mrs. Burton earning $5,000 per month.

14. However, the Burtons' Form 122C-1, "Chapter 13 Statement of Your Current Monthly Income and Calculations of Commitment Period," (Doc. 1 at 45, ¶ 2) states that Mrs. Burton earns only $250 per month. *See also* Doc. 1 at 56, ¶ 39 (stating that the Burtons' combined monthly income is $10,250).

15. No explanation is given for the 2,000% difference in Mrs. Burton's income found in the Burtons' Schedules.

16. Further, the Burtons' Statement of Financial Affairs does not show Mrs. Burton ever earning more than $3,700 in any year since 2021. (Doc. 1 at 48–59, ¶ 4.)

17. The Burtons fail to meet the "regular income" requirement of 11 U.S.C. § 109(e) and thus do not qualify as chapter 13 debtors. The Plan thus does not satisfy the requirements of section 1325(a)(1).

### The Burtons' Lack of Good Faith Prevents Confirmation
### (11 U.S.C. §§ 1325(a)(3) and (a)(7))

18. In addition to the Burtons' failure to be honest regarding their eligibility to be chapter 13 debtors, the Burtons' lack of good faith is evident in other omissions and actions by the Burtons.

19. First, the Burtons did not schedule Mr. Burton's obligations to the United States of America arising under his criminal case, *United States of America v. James Reuben Burton, Jr.*, 3:02-CR-21 (W.D.N.C.) (the "Burton Criminal Case").

20. Mr. Burton's obligation to pay the United States arises from his conviction in the Burton Criminal Case. *See* Judgment in a Criminal Case, *United States of America v. James Reuben Burton, Jr.*, 3:02-CR-21 (W.D.N.C. July 1, 2003) (Doc. 4 in the Burton Criminal Case, at p. 4) (imposing an assessment of $500 and ordering restitution in an amount "[a]s determined by the Special Master") (a true copy of which is attached as **Exhibit 1**); and Order of Garnishment, *United States of America v. James Reuben Burton, Jr.*, 3:02-CR-21 (W.D.N.C. December 9, 2009) (Doc. 42 in the Burton Criminal Case (a true copy of which is attached as **Exhibit 2**)) ("Defendant was ordered to pay an assessment of $500 and restitution of $3,204,078.98").

4

21. As recently as July 22, 2021, the district court entered a document captioned "Instructions to Defendant[;] Clerk's Notice of Post-Judgment Garnishment, Execution, Receivership, Garnishment, and/or Sequestration and Right to Have Exemptions Designated (Request for Hearing) (Burton Criminal Case, Doc. 78; the "Burton Garnishment Notice" (a true copy of which is attached as **Exhibit 3**)).

22. The Burton Garnishment Notice states that a "balance of $2,715,625.23 [of Mr. Burton's restitution obligation] remains outstanding as of July 13, 2021." *See* Ex. 3.

23. Upon information and belief, most, if not all, of the amount listed on Exhibit 3 remains unpaid.

24. The Burtons, however, failed to schedule Mr. Burton's criminal restitution obligation on Schedule E/F (Doc. 1 at 26–36).

25. The 20-year statute of limitations on Mr. Burton's restitution obligation has not expired because Mr. Burton was released from imprisonment less than 20 years ago. *See* 18 U.S.C. § 3613(b) (captioned "Termination of Liability," this provision states that "[t]he liability to pay restitution shall terminate on the date that is the *later* of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution." (Emphasis added.)); *see also* Fed'l Bureau of Prisons Inmate Locator result for James Reuben Burton, Jr. (https://www.bop.gov/inmateloc/, accessed March 14, 2023 (a true copy of this report

is attached as **Exhibit 4**) (showing that Mr. Burton was released from confinement on November 10, 2008).

26. Additionally, federal law establishes that Mr. Burton's payment obligations to the United States cannot be discharged in bankruptcy. 18 U.S.C. § 3613(e) and (f).[1]

27. CCC and Natan Holdings eagerly await the explanation why the Burtons omitted Mr. Burton's criminal restitution obligation from the Burtons' Schedules.

28. The Burtons' Schedules also fail to schedule a debt to CCC, even though CCC sued Mr. Burton personally (*see* Petition for Damages and Injunctive Relief, *Crypto Colo Center Corp. v. Dei Vitae Enterprises, LLC and James Reuben Burton, Jr.,* Case No. JF-2022-CV-000073 (Jefferson County, Kansas, District Court October 21, 2022) (a filed stamped copy is attached as **Exhibit 5**), and Mr. Burton filed an answer and counterclaim against CCC less than three months ago. *See* Answer and

---

[1] **(e) Discharge of Debt Inapplicable.—**

No discharge of debts in a proceeding pursuant to any chapter of title 11, United States Code, shall discharge liability to pay a fine pursuant to this section, and a lien filed as prescribed by this section shall not be voided in a bankruptcy proceeding.

**(f) Applicability to Order of Restitution.---**

In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution.

18 U.S.C. § 3613.

6

Counterclaim, filed on December 21, 2022, in the Jefferson County, Kansas, District Court (a true copy of which is attached as **Exhibit 6**).

29. CCC's action against DVE and Mr. Burton involves separate and distinct claims from CCC's attempt to foreclose on the judgment lien originally obtained by Natan Holdings.

30. The Burtons' bad faith also is shown by inconsistent factual allegations in different courts.

31. DVE's and Mr. Burton's Answer and Counterclaim, filed in state court in Kansas, alleges that "[t]he well control insurance on the [Kansas] property remains in the name of Reuben Burton." Ex. 6 at ¶ 3(4).

32. However, the Burtons did not schedule (i) such insurance as an asset (*see* Schedule A/B, Doc. 1 at 18, ¶ 31, and at 20 (no legal or equitable interests in business-related property)) or (ii) the cost of well-control insurance premiums as an expense (*see* Schedule J, Doc. 1 at 42–43, ¶ 15).

33. Since filing their chapter 13 petition, the Burtons' actions also show that they have not acted in good faith.

34. Form 106Sum (Doc. 1 at 10) states that the Burtons have more than $11 million in assets, most of which consists of the Burtons' interest in DVE, which they valued at $9,999,999.99. *See* Schedule A/B, Doc. 1 at 16, ¶ 19.

35. A few days after the Burtons filed their petition, Mr. Burton, as DVE's Managing Director, executed a General Warranty Deed transferring title to DVE's real property in Jefferson County, Kansas, to "Marigny Oil & Gas." The Jefferson

7

County, Kansas, Register of Deeds recorded the deed on February 27, 2023. *See* General Warranty Deed, recorded on February 27, 2023, with the Jefferson County, Kansas, Register of Deeds at 2023R0447 (a true copy of which is attached as **Exhibit 7**).

36. DVE filed its own chapter 11 petition the following day, on February 28, 2023 (Case No. 23-30148).

37. Mr. Burton previously stated that DVE owns 50% of the equity interests in Marigny Oil & Gas. *See* email from Mr. Burton to Donato Guadagnoli and Max Smetannikov [CCC principals], 7:42 a.m., August 5, 2022 (a true copy of which, with redactions, is attached as **Exhibit 8**).

38. The General Warranty Deed (Ex. 7) states that DVE sold the Kansas property to Marigny Oil & Gas for $2,200,000.

39. However, on March 8, 2023, at a hearing in the DVE bankruptcy court, Susan Burton admitted that DVE did not receive $2,200,000 for transferring title to the Kansas property.

40. On March 8, Mrs. Burton stated that the buyer, Marigny Oil & Gas, paid only an undisclosed portion of the alleged $2,200,000 purchase price and that DVE did not receive any of the purchase price.

41. As if more was needed to show the lack of good faith by the Burtons, the General Warranty Deed shows it was prepared by "Lawrence ONeill," with an address of 240 Central Park South, New York, New York 10019. *See* Ex. 7.

8

42. Upon information and belief, this Lawrence ONeill is Lawrence Daniel O'Neill, an attorney who works in New York (but is not barred there). Mr. O'Neill was disbarred by the Maryland Court of Appeals on March 9, 2022, for dishonesty and other matters. *See Attorney Grievance Comm'n of Maryland v. Lawrence Daniel O'Neill,* Misc. Docket AG No. 41 (Md. Ct. App. March 9, 2022) (a true copy of which is attached as **Exhibit 8**).

43. Mr. O'Neill also represented Marigny Partners Ltd. in its effort to buy assets of KLMKH, Inc. *See* Letter of Intent correspondence from Marigny Partners Ltd. to the Board of Directors of KLMKH, July 29, 2022 (a true copy of which is attached as **Exhibit 9**[2]); and Attestation Letter and Proof of Client Funds, from Lawrence Daniel O'Neill to the Board of Directors of KLMKH, August 1, 2022 (a true copy of which, with certain redactions, is attached as **Exhibit 10**).

44. "L. Daniel O'Neill" signed the letter of intent as Marigny Partners' "Director and Counsel." *See* Ex. 9 at 5.

45. The Attestation Letter states that Marigny Partners is a client of O'Neill & Company, International Legal Advisors. *See* Ex. 10.

46. Transferring title to the Kansas property from DVE to Marigny Oil & Gas after the Burtons began this case reeks of bad faith and fraud that taints the Burtons' bankruptcy case and prevents confirmation of their Plan.

---

[2] This document was marked "Confidential" by Marigny Partners. *See* Ex. 9 at 1, 6. However, KLMKH did not sign this document or a confidentiality agreement, nor did KLMKH otherwise agree to keep it or its contents confidential. A review of the document fails to reveal any proprietary or personnel information that could justify asking the Court to file it under seal.

9

WHEREFORE, CCC and Natan Holdings request that the Court deny confirmation of the Burtons' Chapter 13 plan (Doc. 14) and grant CCC and Natan Holdings such additional relief as the Court deems reasonable and just.

March 14, 2023

/s/ Bradley E. Pearce
Bradley E. Pearce
NC State Bar No. 18368
PEARCE LAW PLLC
101 N. Tryon Street, Suite 600
Charlotte, NC 28246
704-910-6385
980-321-0593 (fax)
brad@pearcepllc.com

*Counsel for Crypto Colo Center Corp. and Natan Holdings, LLC*

11

## CERTIFICATE OF SERVICE

     I certify that the preceding document has been served on all parties and parties in interest receiving notice by the Court's electronic filing or case management system and on the Debtors at the following address:

     James Reuben Burton, Jr.
     Susan Hunt Burton
     105 Graham Hall Court
     Matthews, NC 28104

March 14, 2023

                              /s/ Bradley E. Pearce
                              Bradley E. Pearce
                              NC State Bar No. 18368
                              PEARCE LAW PLLC
                              101 N. Tryon Street, Suite 600
                              Charlotte, NC 28246
                              704-910-6385
                              980-321-0593 (fax)
                              brad@pearcepllc.com